**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAROL FLYNN,<br><br>Plaintiff,<br>v.<br><br>BETH ISRAEL LAHEY HEALTH, BETH ISRAEL DEACONESS HOSPITAL PLYMOUTH, INC.,<br><br>Defendants. | Civil Action No.: 1:25-cv-11953-DJC |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

The Defendants, Beth Israel Lahey Health and Beth Israel Deaconess Hospital Plymouth, Inc. (hereinafter, the "Defendants") have moved, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1. (b)(1) to dismiss the Plaintiff, Carol Flynn's (hereinafter, "Flynn" or the "Plaintiff") Complaint for failure to state a claim. Plaintiff opposes the *Defendants' Motion to Dismiss* (hereinafter, the "*Motion*") and submits it should be denied in its entirety.

**STANDARD OF REVIEW**

The Plaintiff opposes Defendants' *Motion* and submits that at this stage of litigation it would be premature and unjust to grant Defendants' *Motion* for the reasons enumerated below.

First, when deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020).

"A judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)." *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-BAS-JLB, 4 (S.D. Cal. Mar. 4, 2021).

The Federal Rules of Civil Procedure 8(a)(2) states in relevant part that a complaint must contain "a short and plain statement of the claim" showing that the party pleading is entitled to relief. Further, neither a "detailed factual allegation" or an "exposition of [plaintiff's] legal argument" are required" *Chalifoux v. Chalifoux*, Case No. 14-cv-136-SM at *2 (D. NH Ap 25, (2014), citing *Santiago v. Puerto Rico*, 655 F3d 61,72 (1st Cir 2011) (citations omitted) and *Skinner v. Switzer*, 131 S.Ct. 1289, 79 L.Ed.2d 233, 242 (2011).

For the attendant motion, the Court must accept all factual allegations in the Complaint as true and accurate and draw all inferences in Plaintiff's favor as well as look at all facts alleged in the pleadings submitted, including documents attached as Exhibits. *Vierra v. First American Title*

*Company*, 668 F. Supp. 2d 282, 289 (D. Mass. 2009), citing *Declude, Inc., v. Perry*, 593 F.Supp.2d, 290, 294 (D. Mass. 2008) and *Phoung Luc*, 496 F3d at 88.

In addition, "the Court may also consider documents if (1) the parties do not dispute their authenticity, they are central to the plaintiff's claim or (3) they are sufficiently referred to in the complaint". *Id*, quoting *Curran v. Cousins*, 509 F.3d 36,44 (1st Cir. 2007). Additionally, the Court may consider "matters of public record and facts susceptible to judicial notice" *Pearson v. Hodgson*, 468 F.Supp. 3d 459,462 (D. Mass. 2020) (quoting *Haley v. City of Bos,* 657 F.3d 39,46 (1st Cir 2011).

For a Motion to Dismiss in an employment cause of action, pursuant to Rule 12(b), the Supreme Court in a unanimous decision, delivered by Justice Thomas, negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, **not** a pleading standard. "It seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." "We hold that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain" statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). *See also Bell Atlantic Corp v Twombly,*550 U.S 544 (2007), which expressly supports the aforementioned proposition and neither overturns or negates the standards set forth in *Swierkiewicz* and the cases quoted therein.

# I. ARGUMENT

## A. Plaintiff, In Fact, Stated a Valid Claim for Religious Discrimination.

In order to establish a prima facie case of religious discrimination, Flynn must meet a three (3) part test. She must show that: "(1) a bona fide religious practice conflicts with an employment requirement, (2) [she] … brought the practice to the [employer's] attention, and (3) the religious practice was the basis for the adverse employment decision." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.,* 279 F.3d 49, 55, (1st Circuit 2002) (quoting *EEOC v. United Parcel Serv.,* 94 F.3d, 314, 317 (17th Cir. 1996).

In the instant matter, the Complaint specifically alleges that Flynn, a "born again Christian" followed the Defendants' process for requesting a religious exemption from taking a third booster shot due to her "sincerely held religious beliefs". The Complaint further states that Plaintiff's sincerely held religious beliefs are rooted in Christianity and she expressed that receiving the COVID-19 vaccine violated her sincerely held religious beliefs, as she perceived it could injure her body. Additionally, she emphasized that her faith is in "*Jesus Christ*," not tied to any specific church or denomination, which she believes secular individuals may struggle to understand. Her religious exemption request was denied by Defendants' committee stating, "*no religion forbids vaccines,"* which she felt mocked her beliefs and demonstrated a lack of discernment of spiritual matters by those reviewing her request.

When all reasonable inferences are drawn in Flynn's favor, it is clear that she (1) holds religious beliefs that conflict with the Defendant's Vaccination Policy, (2) she informed the Defendants of her beliefs and (3) that her choice to remain unvaccinated due to her sincerely held religious beliefs were the basis for terminating her employment.

Because Flynn has established a prima facie case of religious discrimination, the burden now "shifts to the employer to show that it offered a reasonable accommodation, or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Clouter v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004). Defendants fails to offer any evidence that they would endure undue hardship by granting Plaintiff's request for religious exemption, as outlined in *Groff v. DeJoy,* 600 U.S. 447 468 (2023) ("undue hardship" is shown "when a burden is substantial in the overall context of an employer's business").

**B. <u>Defendants are a State Actor for the Purposes of this Action.</u>**

Flynn is not making freestanding constitutional claims against private entities but is making constitutional claims against the agents of state actors.

Flynn's Complaint is based on the Defendants' policy to mandate that Plaintiff get injected with the COVID-19 vaccine or lose her job. The Defendants did not originate this mandate it was **ordered** to create and enforce the policy per a mandate of the Federal and State Government. Accordingly, Defendants carried out a policy that originated from government actors which they were mandated to enforce.

The Center for Medicare and Medicaid Services (hereinafter, "CMS") mandated hospitals receiving Medicare and Medicaid funds to promulgate and enforce policies requiring their employees to be injected with the COVID-19 vaccine. *See*, CMS 3514-IFC. Defendants created the Vaccine Mandate Policy in question because they were ordered to do so by the Federal Government. Defendants are therefore state actors because they acted as government agents Defendants receive Medicare and Medicaid funds and therefore are mandated to follow the policy of CMS.

Moreover, whether an entity is properly considered a state actor under Supreme Court case law is factually dependent. Therefore, at this early stage of litigation, Defendants' Motion to Dismiss must be rejected until the parties have had an opportunity to engage in discovery.

Under the doctrine of state action, courts may, under certain circumstances, treat "the deed of an ostensibly private organization or individual" as if it were performed by the Federal government or a state government. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "State action may be found if, … there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)). State action may also be found under the public function test or the state compulsion test. *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992). Under any and all of these tests, Defendants are, and were, a state actor for purposes of constitutional torts. "[T]he public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the exclusive prerogative of the State." *Id.* at 1131 (quotation marks omitted).

State action may exist when the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Private entities and individuals may be state actors when they act as "a willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (internal quotation marks omitted). Private entities and individuals may also be state actors when they "[have] been delegated a public function by the state." *Brentwood Acad.*, 531 U.S. at 296 (citations omitted). Additionally, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a

governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

The United States Congress did not pass a nationwide mandate forcing citizens to receive COVID-19 vaccines for the simple reasons that it lacked both the political will and the constitutional authority. Nonetheless, the Executive branch of the Federal government coerced Defendants into implementing its vaccine mandate. Exec. Order No. 14042 expressed the desire of the President and the Executive branch to require citizens to be vaccinated while, at the same time, acknowledging that neither they, nor Congress, had the authority to mandate this medical procedure. The Federal government attempted to implement a broad-reaching vaccine mandate under its authority to regulate occupational health and safety. However, the Fifth Circuit Court of Appeals issued a decision that declared that the Federal Government lacked authority under the Occupational Safety and Health Act. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor,* 17 F.4th 604, 617 (5th Cir. 2021); 29 U.S.C. § 651 *et seq.* This view was affirmed by the Supreme Court before Exec. Order 14042 became effective. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 665–66 (2022).

Instead of complying with the limitations imposed by the United States Constitution, the Executive branch of the United States government attempted a work-around; it created a "sword of Damocles" for a large sector of the citizenry: Either get vaccinated or suffer the extreme financial consequences of losing your job. As a result, it voluntarily and intentionally decided to lead the way and impose a vaccine mandate in an attempt to garner the support and favor of the Executive branch of the United States government, from whom it derives substantial funding.

Defendants receive so much of their funding from the Federal government, it is

completely beholden to it. Defendants' conduct was so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon governmental action. Plaintiff submits that Defendants willfully participated in joint activity with the Federal government, and deliberately aided the Federal government in its efforts to influence its employees to receive COVID-19 vaccination by threatening their employment. *See*, Exec. Order No. 14043, 86 Fed. Reg. 50989 (Executive order mandating vaccination for federal employees, issued simultaneously to Exec. Order No. 14042).

Defendants have also violated Plaintiff's constitutional rights under the religion clause of the Constitution. Defendants violated Plaintiff's right to freedom of expression protected by the First Amendment by terminating her because she voiced opposition to the vaccine mandate. Throughout this matter Defendants have acted as an arm of the government.

The Free Exercise Clause of the First Amendment of the United States Constitution applies when government action "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993) (citations omitted). Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, … it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citations omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by … facial neutrality," as "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id.* at 534.

Here, Defendants' vaccine mandate violated the Free Exercise Clause. Serving as an actor for the Federal Government, Defendants purposefully enacted their vaccine mandate to infringe

upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs.

Defendants' company-wide vaccine mandate was not justified by a compelling interest and Defendants also failed to narrowly tailor its implementation of a vaccine mandate by ignoring the natural immunity of the Plaintiff. Clearly, the Plaintiff was at least as unlikely to spread COVID-19 as individuals who consented to being vaccinated. At the time it terminated Plaintiff, and thereafter, Defendants had no scientific evidence that employees with natural immunity were more likely to spread COVID-19 than employees who had been vaccinated. Defendants were aware that many scientists and the European Union acknowledged the obvious impact of natural immunity.

Defendants were aware, or should have been aware, at the time it terminated Plaintiff, that definitive scientific evidence was lacking that the vaccines prevent the spread of COVID-19. Rather, the scientific evidence establishes, at best, that the vaccines lessen the symptoms of COVID-19 and reduce the number of hospitalizations. To the extent that Defendants may have considered the "public health risk" posed by unvaccinated individuals, Defendants were not entitled, in the face of religious opposition to the vaccines, to override an individual's choice to risk the possibility of worse symptoms, death, and hospitalization for themselves, especially since there was no scientific evidence that the vaccine prevented the spread of the disease or the severity of the disease in others.

Pursuant to 42 U.S.C. § 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)". The Religious Freedom Restoration Act ("RFRA") applies to Defendants as an actor for the federal government. 42 U.S.C. § 2000bb-

2(1). Pursuant to 42 U.S.C. § 2000bb-1(b), "Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

**B. Plaintiff Can Maintain a Claim under Section 1983.**

The Civil Rights Act, known popularly as a "1983 Suit," was first passed in 1871 which provides that any person acting under color of State law who denies any person a right guaranteed by the Constitution of the United State may sue for damages resulting from such deprivation. Although the United States Supreme Court has granted absolute immunity to judges, legislators, prosecutors, and presidents of the United States. The doctrine of absolute immunity protection in 1983 lawsuits was not extended to law enforcement and executive branch officials. Although qualified immunity is a recognized defense for these officials when they are charged with constitutional violations, it does not prevent them from being sued and is dependent on the type of conduct alleged.

To state a viable § 1983 claim, Plaintiff must show that (1) the conduct complained of transpired under the color of law and (2) as a result, Plaintiff suffered a deprivation of rights protected by the U.S. Constitution. *Hines v. Ellis Nursing Home, Inc.*, et al, U.S.D.C. Docket 23-cv-10874-DJC (Casper, J). Memorandum and Order dated November 14, 2023, citing *Klunder v. Brown Univ.*, 778 F.3d.24,30 (1st Cir. 2015).

Agents of the Federal and State government are considered to be acting under the color of law for the purpose of § 1983 litigation. Flynn submits the Complaint recites sufficiently what the Defendants did to violate her civil rights under the named statute. It is more than obvious that violating such statute deprives the Plaintiff of her due process and equal protection and treatment

rights under the Constitution, all of which occurred under color of law. Therefore, Plaintiff's claims do not fail.

1. **<u>There is a Constitutional Right to a Religious Exemption from the Commonwealth's Vaccine Requirement.</u>**

Plaintiff contends that Defendants have violated her constitutional rights under Title VII and M.G.L Chapter 151B as well as the religion clause of the United States Constitution. Defendants violated Plaintiff's right to freedom of expression protected by the First Amendment by terminating her because of her sincerely held religious beliefs and opposition to the vaccine mandate. It is readily apparent that the Defendants acted to deprive Plaintiff of his right to seek and receive a religious exemption.

The Free Exercise Clause of the First Amendment of the United States Constitution applies when government action "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993) (citations omitted). Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, … it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citations omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by … facial neutrality," as "[t]he Free Exercise Clause protects against governmental hostility, which is masked, as well as overt." *Id.* at 534.

Here, Defendants' vaccine mandate violated the Free Exercise Clause. Serving as an actor for the Federal Government, Defendants purposefully enacted its vaccine mandate to infringe upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs.

Plaintiff states,

> *"I am a born again Christian. I read the Bible daily and I live the way it says I am to live: to the best of my ability. My relationship with my Lord + savior is personal + sincere. I am not a perfect person but with God's help, I grow."* See "Exhibit A" to Plaintiff's Complaint.

Plaintiff's Religious Beliefs are in fact up to a trier of fact to determine whether or not they are sincerely held *See Bazinet v. Beth Israel Lahey Health, Inc.* 113 F.4th 9, 16 (1st Cir. 2024).

To state a claim for religious discrimination under both Title VII and Chapter 151B, a complaint must assert facts from which one "can infer the following four elements: (1) that [the] plaintiff has beliefs that are religious and sincerely held, and (2) that his employer imposed upon his employment requirement (3) that conflicted with those beliefs and (4) 'was the reason for his adverse employment action." *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025) (citation omitted). The veracity of these allegations as to his beliefs and the inferences to be drawn from them are not for the court to determine on a Rule 12(b) motion.

Instead, the court must determine whether those beliefs, taken as his true beliefs, suffice to allege the first element of his religious discrimination claim, namely that he had a bona fide religious belief. The First Circuit recently allowed such a claim to proceed where the plaintiff alleged "the tenets of her religion prohibited her from defiling her perfectly created body, and that her prayers and guidance from the Holy Spirit informed her beliefs that receiving the COVID-19 vaccine would violate the tenet of her faith". *Thornton*, 126 F.4th at 83. The First Circuit has also found allegations about the COVID-19 vaccine being derived from aborted fetuses to be sufficient for forming a religious objection where the plaintiff "explained that taking the vaccine would make her complicit in the performance of abortions which would be 'an aberration to [her] Christian faith'" and also provided "numerous quotations from religious

sources that she says support her view." *Bazinet*, 113 F.4th at 16.

Additionally, Defendants' vaccine mandate was not justified by a compelling interest and Defendants also failed to narrowly tailor its implementation of a vaccine mandate by ignoring the natural immunity of many of its employees. The evidence available from the CDC corroborates that Plaintiff was at least as unlikely to spread COVID-19 as individuals who consented to being vaccinated. At the time it terminated Plaintiff, and thereafter, Defendants had no scientific evidence that employees with natural immunity were more likely to spread COVID-19 than employees who had been vaccinated. Defendants were aware that many scientists and the European Union acknowledged the obvious impact of natural immunity.

Moreover, the Defendants' mandate violates the Fourteenth Amendment to the United States Constitution, which includes clearly established fundamental rights and liberty interests of personal autonomy and bodily integrity. *See*, e.g., *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Roe v. Wade*, 410 U.S. 113 (1973) (reversed on other grounds); *Planned Parenthood v. Casey*, 505 U.S. 833 (1992); *Rochin v. California*, 342 U.S. 165 (1952); *Obergefell v. Hodges*, 576 U.S. 644 (2015); and the right to reject medical treatment, *Cruzan v. Director, Missouri Dep't Health*, 497 U.S. 261 (1990) and *Riggins v. Nevada*, 504 U.S. 127 (1992).

In modern jurisprudence, burdens upon fundamental rights require strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). As mandated vaccinations are a substantial burden, Defendants must prove narrow tailoring to a compelling interest that justifies mandatory vaccinations. While the government may have a general interest in mitigating COVID-19, the following problems reveal no narrow tailoring to any compelling interest exists. Naturally acquired immunity from COVID-19 is as robust as vaccine-acquired immunity, so there is no compelling interest (nor any rational basis) in vaccinating or requiring the vaccination of those

who have already had COVID-19.

Furthermore, even absent the fundamental rights at issue, the Defendants' mandate also violates the Fourteenth Amendment under modern rational basis scrutiny, since the mandate is unreasonable and has no real or substantial relationship towards protecting the public health, particularly as applied to those with robust natural immunity. The arms of the government may not irrationally single out one class of individuals for discriminatory treatment. The mandate irrationally singles out the convalescent and discriminates against them.

In deciding whether Substantive Due Process rights have been violated, a court must determine "that a person has a 'liberty interest' under the Due Process Clause." *Cruzan by Cruzan v. Dir. Missouri Dept. of Health*, 497 U.S. 261, 279 (1990).

When there exists a liberty interest, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). The Due Process Clause "forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest". *Glucksberg*, 521 U.S. 702, 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

It is well-established that there exists a "constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan*, 497 U.S. at 278; *see also,* e.g., *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30 (1905) (recognizing this liberty interest in the context of a smallpox vaccine); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) (recognizing the liberty interest of a prisoner in refusing involuntary administration of antipsychotic medication). Courts have also recognized a constitutionally protected liberty interest in freedom from bodily restraint. *See,* e.g., *Youngberg*, 457 U.S. at 316.

It is also well-established that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (citations and quotations marks omitted). The Unconstitutional Conditions Doctrine forbids "the government from coercing people into giving [ ] up" "the Constitution's enumerated rights." *Id.* (in the context of the Takings Clause of the Fifth Amendment); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (in the context of freedom of speech under the First Amendment); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269 (1974) (in the context of the right to travel under the Fourteenth Amendment).

## III. CONCLUSION.

The crux of this action is based on the Defendants' unilateral policy mandating Plaintiff become injected with the COVID-19 vaccine. The Defendants did not originate this mandate; it was acting under **orders** of the State and Federal Government and MA DPH guidance Thus, Plaintiff submits that Defendants were and are a state actor. Moreover, whether an entity is properly considered a state actor under Supreme Court case law is factually dependent. Therefore, Defendants' *Motion* is premature and must be rejected until the parties have had an opportunity to engage in discovery.

Plaintiff's *Opposition* is, of course, fact-driven, and is not amenable at this stage of the proceedings for resolution without allowing the case to proceed through discovery. Additionally, Defendants could have simply accommodated Plaintiff's religious exemption request by allowing her to wear a mask, testing frequently and wearing proper PPE. These precautions were previously sufficient and did not cause the Defendants "undue hardship".

The CDC has consistently stated, and Plaintiff requests that the Court take Judicial Notice, that the best way to prevent the spread of COVID-19 is to wear a mask and maintain

sanitary conditions. Being vaccinated has virtually no effect on spreading the disease. Plaintiff respectfully assert that discovery in this matter will corroborate the fact that vaccinated people also spread the disease.

Lastly, in sum, the Plaintiff submits that taken **"in the light most favorable to her"** that there is substantial evidence that he engaged in protected activity under 42 U.S.C. § 1983, and pursuant to 42 U.S.C. § 1983 the Plaintiff need not have exhausted his administrative remedies under M.G.L. c. 151 and Title VII, upon which he contends that she suffered adverse employment action connected to protected activity and that the Defendants constructively terminated her employment by retaliatory animus. *See,* the First Circuit Court of Appeals decision in *Lowe v. Mills* 22-1710 (1st Cir. 2023), if the Defendant granted any exemptions to "any of its employees", it cannot claim "undue hardship". As a matter of law, the Defendants have a duty to protect its employees from harassment and/or retaliation when they demonstrate "a good faith reasonable belief that the underlying challenged actions [are] unlawful" *Roy v Correct Care Solutions, LLC.*, 914 F.3d 52, 57 (1st Cir. 2019). It is a question of fact whether or not the scientific evidence and the leading authorities on COVID-19 vaccination are now pointing to the fact that being vaccinated does not prevent the spread of the disease and that the most effective means of preventing the spread is to wear a mask and maintain sanitary conditions.

WHEREFORE, in the interests of justice, and based upon the above reasons, the Plaintiff respectfully submits that the Defendants' *Motion* must be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff believes that oral argument may assist this Honorable Court in deciding this motion and thus request oral argument.

## LEAVE TO FILE AN AMENDED COMPLAINT

Should the Court dismiss Plaintiff's Complaint, the Plaintiff respectfully requests leave to file an Amended Complaint.

Respectfully submitted,
The Plaintiff,
Carol Flynn,
By her attorneys,

DATED: December 5, 2025

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
E-mail: Richard@chamberslawoffice.com

DATED: December 5, 2025

*/s/ Joseph Spinale., Esq.*
Joseph Spinale, Esq.
BBO#: 548547
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 838-1411
Fax: (781) 581-8449
E-mail: Joe@chamberslawoffice.com

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel hereby certifies that counsel for the Plaintiff, conferred with counsel for the Defendants and attempted in good faith to resolve or narrow the issues presented in this *Motion*.

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: December 5, 2025

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.